IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Carl Johnson, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Bank of America, N.A.,<br><br>　　　　　Defendant. | C/A No.: 3:09-1600-JFA<br><br><br><br>**ORDER** |

This matter comes before the court on defendant Bank of America's ("BofA") motion to dismiss [dkt. # 30] plaintiff Carl Johnson's ("Johnson") amended complaint [dkt. # 27]. The parties have fully briefed the motion and the court heard oral argument at a hearing held on March 8, 2010, where the court took the motion under advisement. This order serves to announce the ruling of the court.

I.　　Factual and Procedural Background

BofA provides its checking account holders certain online banking services pursuant to an online service agreement (the "Agreement") account holders execute prior to accessing BofA's online banking services. Pursuant to the Agreement, BofA offers online bill payment ("Bill Pay"). To effect payment, BofA uses a vendor, Fiserv, to issue either (1) an electronic transmission, (2) a corporate check, or (3) a personal check. When Fiserv selects either a corporate check or electronic transmission to deliver payment, BofA debits the customer's account on the scheduled delivery day, or if that day is a weekend or holiday, the prior

banking day. For personal checks, BofA debits the customer's account when the payee presents the check for payment. By way of example, Johnson alleges that he requested BofA to make a series of payments to retail shops in the Columbia, South Carolina area that were not equipped to receive electronic transmissions. He asserts that his account was debited the day that the checks were slated for delivery and that the payees did not present the checks until between three days and ten days after delivery.

Johnson alleges that the practice of debiting accounts upon delivery, and not presentment, deprives customers of the interest they would have otherwise earned during that period. Johnson also alleges that delegating the discretion to select payment method, combined with a financial motive to deprive customers of interest, constitutes breach of contract. In his complaint Johnson asserts two claims for breach of contract pursuant to the Uniform Commercial Code ("UCC") as adopted in South Carolina, and a claim for breach of the implied covenant of good faith and fair dealing implicit in all contracts. He seeks compensatory and injunctive relief.

II. Discussion

   A. Standard of Review

Under the Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Recent Supreme Court caselaw has interpreted this rule to require "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __U.S.__, 129 S.

Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct at 1949. Recitals of the elements of a cause of action bolstered only by conclusory statements will fail to insulate a pleader from a motion to dismiss. Id.

Pursuant to Iqbal and Twombly, this court must undertake a two-prong approach in determining the sufficiency of plaintiff's complaint. First, bearing in mind that a court must accept as true all factual allegations in the complaint, this court must segregate allegations that are factually supported and those which are mere legal conclusions and not entitled to a presumption of truth. Iqbal, 129 S. Ct. at 1950. Second, this court must determine whether the remaining factual allegations in the complaint state a plausible claim for relief, based on "judicial experience and common sense." Id.

B.  Applicability of the UCC

Johnson alleges that by delegating the choice of payment method used to fulfill his Bill Pay requests, BofA violates Articles 3 and 4 of the UCC. S.C. Code Ann. §§ 36-3-101–805 (2003 & Supp. 2009) ("Article 3"); S.C. Code Ann. §§ 36-4-101–504 (2003 & Supp. 2009) ("Article 4"). As an initial proposition, contracts for services are generally governed by South Carolina common law, and neither the facts of the case, nor Johnson, suggest that this is a case involving the sale of goods, which would implicate Article 2 of the UCC. See Palmetto Linen Serv., Inc. v. U.N.X., Inc., 205 F.3d 126 (4th Cir. 2000).

1. Article 3

Article 3 does not to apply to the decision of choosing a means of making payment. Articles 3 appears constrained in its application to the various issues arising out of the handling of negotiable instruments themselves. Swindler v. Swindler, 584 S.E.2d 438, 440 (S.C. App. 2003) ("Article 3 applies to negotiable instruments."). Where a contract contemplates the issuance of a negotiable instrument, the contract is governed by common law principles while the negotiable instrument is governed "according to its tenor without regard to any breach of [another contract]." See, e.g., Burch v. Ashburn, 368 S.E.2d 82 (S.C. App. 1988). To the extent that Johnson argues that the Article 3's presentment rules apply to the facts at hand, his argument misses the mark. Johnson nowhere alleges that BofA improperly charged his account prior to presentment of a personal check drawn on his account—he alleges that no personal checks were ever drawn on his account. Moreover, Johnson lacks standing to allege presentment violations for corporate checks drawn on Fiserv's account. At bottom, Johnson alleges violation of the Agreement, rather than improper handling of negotiable instruments.

2. Article 4

Article 4 governs bank deposits and collections. S.C. Code Ann § 36-4-401 provides that a bank may charge a customer's account for any item that is otherwise properly payable. An item is an instrument for the payment of money. S.C. Code Ann. § 36-4-104(g). Here, however, the dispute centers over the proper time to debit an account for an instrument drawn

on the account of another—Fiserv. Article 4 does not appear to apply to such a transaction, and Johnson has failed to put forth any argument beyond conclusory statements that it does. Accordingly, all claims pursuant to Articles 3 and 4 of the UCC are hereby dismissed with prejudice.[1]

    C.    Johnson Alternatively Alleges Common Law Breach of the Implied Covenant of Good Faith and Fair Dealing

Johnson alleges that BofA breached the Agreement by violating the implied covenant of good faith and fair dealing. To prove breach of contract, a plaintiff must prove the contract, its breach, and the damages caused by such breach. Fuller v. Eastern Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962). "When the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect." Ellis v. Taylor, 449 S.E.2d 487, 488 (S.C. 1994). "The Court's duty is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." Jordan v. Security Group, Inc., 428 S.E.2d 705, 707 (S.C. 1993). Regardless of a contract's folly or wisdom, however, the parties must perform a contract pursuant to the implied covenant of good faith and fair dealing. Adams v. G.J. Creel & Sons, Inc., 465 S.E.2d 84, 85 (S.C. 1995). However, "there

---

[1] If the court had found Articles 3 and 4 of the UCC applicable to the facts of the case, the result would not differ. UCC Article 3 defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." S.C. Code Ann. § 36-3-103(6) (Supp. 2009). The court finds Johnson has failed to allege facts that plausibly indicate BofA's or Fiserv's lack of honesty in fact in performing the contract. The court also finds that Johnson has failed to adequately allege how BofA and Fiserv's performance fell outside the bounds of reasonable commercial standards or even suggested what reasonable commercial standards would be.

is no breach of an implied covenant of good faith where a party to a contract has done what provisions of the contract expressly gave him the right to do." Id.; First Fed. Sav. & Loan Ass'n v. Dangerfield, 414 S.E.2d 590 (S.C. App. 1992).

      1.      Good Faith and Fair Dealing

Johnson alleges that BofA's assignment of rights and delegation of duties to Fiserv effects a breach of the implied duty of good faith and fair dealing implicit in every contract. Specifically, Johnson argues that Fiserv improperly caused Johnson to incur losses when it prematurely debited his account. As an initial matter, the court notes that an assignee or delegate stands in the shoes of the assignor or delegator. Moore v. Weinburg, 644 S.E.2d 740 (S.C. App. 2007). Accordingly, if the agreement allows or requires BofA to act or not act in a certain way, it also allows or requires Fiserv to conduct itself in the same manner.

The Agreement provides Bank of America, incident to its Bill Pay services, the discretion to effect payment through one of three methods. The contract states:

> You authorize us to make payments in the manner we select from the following methods:
>
>> Electronic transmission. Most payments are made by electronic transmission.
>>
>> Corporate check. This is a check drawn on our account or the account of our vendor. If a Payee on a corporate check fails to negotiate the check within 90 days, we will stop payment on the check and recredit your account for the amount of the payment.
>>
>> Personal check. This is a check drawn on your account based on your authorization under this Agreement.

(Amend. Compl. Ex. B at 5.) The Agreement further provides that:

> For payments made by electronic transmission or corporate check, the payment amount will be debited from, or charged to the account you designate on the scheduled delivery date. . . . For payments made by personal check, the account you designate will be debited when the check is presented to us for payment.

(Id.) Johnson alleges that the Agreement governs the relationship between the parties. (Amend. Compl. ¶ 45.) He does not allege that the Agreement is somehow invalid or that some other agreement defines the relationship of the parties. In his complaint, Johnson alleges that BofA's vendor, Fiserv, issued a corporate check to satisfy Johnson's outstanding accounts at several Columbia, South Carolina establishments that have not elected to receive electronic transmissions. (Amend. Compl. ¶¶ 63–92.) Johnson alleges that by issuing a corporate check on Fiserv's account, and at Johnson's behest, BofA deprived Johnson of interest he is entitled to.

The plain language of the Agreement states that BofA has the discretion to choose between three methods of payment. The agreement also indicates that a corporate check may be drawn on the account of its vendor and sets forth the relative dates on which a customer should expect his account to be charged for payments he requests BofA fulfill on his behalf. The court finds that the complaint alleges that BofA, through its assignee or delagee Fiserv, "has done what provisions of the [Agreement] expressly gave [it] the right to do." Adams v. G.J. Creel and Sons, Inc., 465 S.E.2d 84. Further, Johnson fails to adequately allege how BofA's actions run afoul of reasonable commercial standards, or how BofA's conduct

7

contravenes the plain language of the Agreement.

   2. The Validity of the Assignment

Johnson also alleges that BofA's assignment of the right to choose payment methods breaches the implied covenant of good faith and fair dealing because the assignment "materially alters the contractual arrangement between [Johnson] and BofA." (Pl. Resp. 9.) In South Carolina, executory contracts, those that have not been fully performed, are assignable, A.E. Finley & Assoc., Inc. v. Hendrix, 247 S.E.2d 328, 330 (S.C. 1978), and "[a]n assignee stands in the shoes of its assignor." Moore v. Weinburg, 644 S.E.2d 740 (S.C. App. 2007). That is to day that the assignee has the same rights and privileges under the contract as the assignor. Twelfth RMA Partners, L.P., v. Nat'l Safe Corp., 518 S.E.2d 44, 46 (S.C. App. 1999). However, rights arising out of a contract cannot be transferred if they are coupled with liabilities or with contracts for personal services, or if they involve a relationship of personal credit and confidence. Green v. Camlin, 92 S.E.2d 125 (S.C. 1956); Cen. Union Bank of S.C. v. N.Y. Underwriters' Ins. Co., 52 F.2d 823, 824–25 (4th Cir. 1931) (stating that most contract rights are assignable, and listing those that are not). Similarly, contract duties are generally delegable, unless prohibited by statute, public policy, the terms of the contract, or if they involve the personal qualities or skills of the obligor. 29 Richard A. Lord, Williston on Contracts, § 74:27 (4th ed. 2009); Restatement (Second) of Contracts § 318. To the extent that Johnson asserts that BofA's assignment and delegation to Fiserv was improper, his argument lacks merit. As noted above, assignments and delegations are

generally valid unless prohibited by law or the terms of the contract, or where the effect of he assignment effects a change in the terms of the contract, as can the case in a contract for personal services. Johnson cites to no statute or case that suggests BofA's assignment and delegation violates the law of South Carolina. Instead, Johnson argues in his response to BofA's motion to dismiss that the assignment and delegation changes the underlying basis of the bargain between BofA and Johnson because, Johnson argues, Fiserv has an improper financial motive to maximize the period in which it can earn interest. However, argument of the existence of an improper motive in a response to a motion to dismiss is a different animal than an allegation in a complaint that Fiserv acts on this motive. Simply stating that an American corporation is motivated by a desire to make money does little more than restate a bedrock principle of capitalism.

Both BofA and Fiserv could reasonably be expected to make an attempt to turn a profit in providing banking services. If BofA, rather than Fisev, executed the Bill Pay requests it would have exactly the same motivations as Fiserv: to minimize the risk incurring loss due to insufficient funds, to lower transactions cost, and to accrue interest from money in its possession. Johnson's argument to the contrary fails to show how his complaint sufficiently alleges that there is any difference between BofA and Fiserv in the execution the Bill Pay requests. (Pl. Resp. 4–6.) Such failure proves fatal to Johnson's argument at the motion to dismiss stage.

In sum, Johnson fails to adequately allege how the assignment and delegation

materially changes the benefit of the bargain under the contract or that Johnson has any interest in BofA, rather than Fiserv, performing the contract. Accordingly, the court finds that BofA's assignment and delegation to Fiserv valid, and that Fiserv stands in the shoes of BofA with respect to the rights and duties created by the Agreement. Because the court finds that neither BofA nor Fiserv, as BofA's assignee, violated the terms of the contract or breached the implied duty of good faith and fair dealing, the court grants BofA's motion to dismiss.[2]

III. Conclusion

Based on the foregoing, the court finds the UCC inapplicable to the facts as alleged in the complaint, and that the result would not differ if it did. The court also finds that the amended complaint alleges that BofA, and its assignee and delegate Fiserv, performed as the Agreement allowed, and in such circumstances there can be no breach of the implied duty of good faith and fair dealing. Johnson also fails to adequately allege that the assignment and delegation to Fiserv was invalid. Accordingly, the court hereby grants BofA's motion to dismiss [dkt. # 30] Johnson's amended complaint with prejudice and with it his individual and class requests for compensatory damages and injunctive relief.

---

[2] The court notes that should the UCC apply to the facts of this case, the validity of the assignment would remain intact. As discussed above, Johnson has failed to adequately allege how the assignment and delegation to Fiserv would "materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of returning return performance." S.C. Code Ann. § 36-2-210(b) (2003).

IT IS SO ORDERED.

April 15, 2010  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge